**McMANIMON, SCOTLAND & BAUMANN, LLC**
75 Livingston Avenue, Suite 201
Roseland, New Jersey 07068
(973) 622-1800
Anthony Sodono III (asodono@msbnj.com)
Thomas M. Walsh (twalsh@msbnj.com)
Michele M. Dudas (mdudas@msbnj.com)
Sari B. Placona (splacona@msnbj.com)
*Counsel to Jointly Administered Chapter 11*
*Debtors and Debtors-in-Possession*

Order Filed on May 14, 2020
by Clerk
U.S. Bankruptcy Court
District of New Jersey

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| In Re:<br><br>Hajjar Business Holdings, LLC, *et al.*,[1]<br><br>Debtor. | CHAPTER 11<br><br>CASE NO. 20-12465-JKS<br>(Jointly Administered) |

**STIPULATION AND CONSENT ORDER REGARDING (I) DEBTORS' MOTION TO EXTEND (A) THE DEADLINES IMPOSED BY 11 U.S.C. § 362(D)(3), (B) THE EXCLUSIVE PERIOD FOR THE DEBTORS TO FILE A PLAN AND SOLICIT ACCEPTANCES THERETO PURSUANT TO 11 U.S.C. § 1121(C) AND (D), (C) GRANTING RELATED RELIEF, AND (II) FUNDING OF DEBTORS' INSURANCE PREMIUMS**

The relief set forth on the following pages, numbered two (2) through seven (7), is hereby ORDERED.

**DATED: May 14, 2020**

Honorable John K. Sherwood
United States Bankruptcy Court

**WHEREAS,** on February 13, 2020 (the "Operating Debtors' Petition Date"), Hajjar Medical Office Building of Jersey City, LLC, Hajjar Medical Office Building of Wayne, LLC, Hajjar Medical Office Building of Roseland, LLC, Hajjar Medical Office Building of New Brunswick, LLC, Hajjar Medical Office Building, LLC, Hajjar Medical Office Building of Carlstadt, LLC, Hajjar Medical Office Building of Hackensack, LLC, Hajjar Warehouse of Hackensack, LLC, Hajjar Medical Office Building of Fairlawn, LLC, Hajjar Medical Office Building of Glen Rock, LLC, Hajjar Business Holdings, LLC, Hajjar Medical Office Building of Mount Kisco, LLC and Hajjar Medical Office Building of Miramar, LLC (collectively, the "Operating Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") with the United States Bankruptcy Court for the District of New Jersey (this "Court");

**WHEREAS**, on February 14, 2020 (the "Owner Debtors' Petition Date", and together with the Operating Debtors' Petition Date, the "Petition Dates"), HMOB of Jersey City Owner, LLC, HMOB of Wayne Owner, LLC, HMOB of Roseland Owner, LLC, HMOB of New Brunswick Owner, LLC, HMOB of Oradell Owner, LLC, HMOB of Carlstadt Owner, LLC, HMOB of Hackensack Warehouse Owner, LLC, HMOB of Glen Rock Owner, LLC, HMOB of Fair Lawn Owner, LLC, HMOB of Hackensack Office Owner, LLC, HMOB of Fair Lawn 15-01 Broadway Owner, LLC, HMOB of Mt. Kisco Owner, LLC, and HMOB of Miramar Owner, LLC, (collectively, the "Owner Debtors" and, together with the Operating Debtors, collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code with the Court;

**WHEREAS**, each of the Owners is a "single asset real estate" debtor under Section 101 of the Bankruptcy Code;

**WHEREAS**, the Debtors' chapter 11 cases are being jointly administered under Case No. 20-12465 (JKS);

**WHEREAS,** Wilmington Trust, N.A., as Trustee for the Registered Holders of Wells Fargo Commercial Mortgage Trust 2016-C34, Commercial Mortgage Pass-Through Certificates, Series 2016-C34 (the "Secured Creditor" and, together with the Debtors, collectively, the "Parties") has filed a Proof of Claim against each of the Owner Debtors' estates asserting a secured claim in the amount of not less than $92,559,761.26 as of the Owner Debtor Petition Date (the "Petition Date Indebtedness" or the "Claim");[2]

**WHEREAS**, the Claim is secured by, among other things, a first priority mortgage lien on the following real property and any improvements located on each (collectively, the "Properties"): (i) 15-01 Broadway, Fair Lawn, New Jersey 07410; (ii) 555 Kinderkamack Road, Oradell, New Jersey 07469; (iii) 630 Broad Street, Carlstadt, New Jersey 07072; (iv) 20 Woodridge Avenue,

---

[2] A summary of the loan and loan documents, including, but not limited to, the promissory notes, mortgages, security agreements, and assignments of leases and rents (as may have been amended, restated or modified from time to time) (collectively the "Loan Documents") giving rise to the Petition Date Indebtedness, and any assignments of the Loan Documents is set forth in the *Stipulated Facts With Respect to the Debtors' Continued and Final Use of Secured Creditor's Cash Collateral* filed by the Parties on April 17, 2020 at Docket No. 91 and in each of Secured Creditors' proofs of claim.

Hackensack, New Jersey 07601; (v) 631 Grand Street, Jersey City, New Jersey 07304; (vi) 403-405 West Pleasantview Avenue, Hackensack, New Jersey 07601; (vii) 14-01 Broadway, Fair Lawn, New Jersey 07410; (viii) 85 Harristown Road, Glen Rock, New Jersey 07452; (ix) 234 Hamburg Turnpike, Wayne, New Jersey 07470 (the "Wayne Property"); (x) 556 Eagle Rock Road, Roseland, New Jersey 07068 (the "Roseland Property"); (xi) 215 Easton Avenue, New Brunswick, New Jersey 08901; (xii) 14601 SW 29th Street, Miramar, Florida 33027; and (xiii) 103-105 South Bedford Road, Mt. Kisco, New York 10549;

**WHEREAS**, the Claim is also secured by, among things, a first priority security interest in other property, as more fully described in the Loan Documents (collectively, the "Personal Property" and together with the Properties, the "Collateral"),[3] which includes, but is not limited to, (i) machinery, furniture, furnishings, equipment, computer software and hardware, fixtures, inventory, materials, supplies and other articles of personal property and accessions thereof owned by the Owner Debtors or in which the Owner Debtors have an interest now or hereafter located upon the Properties or usable in connection with the operation or occupancy of the Properties, including any leases of and deposits related thereto, (ii) all leases and other agreements or arrangements entered into and affecting the Properties, and all rents, rent equivalents, royalties, income, fees, receivables, receipts, revenues, deposits (including security, utility, and other deposits), accounts, cash, issues, profits and other consideration of whatever form or nature from any and all sources arising from or attributable to the Properties, (iii) all accounts, escrows, documents, instruments, chattel paper, claims, deposits and general intangibles contract rights, and causes of action that relate to, derive from or are used in connection with the Properties, and (iv) all proceeds, products, offspring, rents and profits from any of the Collateral.

**WHEREAS**, on February 18, 2020, the Debtors filed a motion styled *Motion Pursuant to 11 U.S.C. §§ 105, 363(c)(2)(B), 363(e), 507(b), Fed. R. Bankr. P. 4001(b), and D.N.J.L.B.R. 4001-4 for Interim and Final Orders Authorizing Use of Cash Collateral* [Docket No. 11] (the "Cash Collateral Motion");

**WHEREAS**, on February 20, 2020, Secured Creditor filed its *Limited Objection and Reservation of Rights in Response to Debtors' Motion for an Order Authorizing the Interim and Final Use of Cash Collateral* [Docket No. 24] (the "Interim Cash Collateral Objection");

**WHEREAS**, on February 27, 2020, this Court entered the *Interim Order Granting Debtors' Motion Pursuant to 11 U.S.C. §§ 105, 363(c)(2)(B), 363(e), 507(b), Fed. R. Bankr. P. 4001(b) and D.N.J. L.B.R. 4001-4 for Interim and Final Orders Authorizing Use of Cash Collateral* [Docket No. 41] (the "First Interim Cash Collateral Order");

**WHEREAS**, pursuant to the First Interim Cash Collateral Order, the Debtors were required to make a monthly Adequate Protection Payment (as defined in the Interim Cash Collateral Order) of $505,000.00, consisting of an interest payment of $347,000.00 (the "Monthly Interest Payment") and a monthly tax escrow of $158,000.00 (the "Monthly Tax Escrow

---

[3] The Collateral pledged by the Owner Debtors includes multiple sources of "cash collateral" as defined in Section 363(a) of the Bankruptcy Code.

Payment"), to Secured Creditor due and owing no later than the fifteenth (15th) of the month commencing March 10, 2020 for the duration of the Interim Period;[4]

**WHEREAS**, the Debtors remitted the full Adequate Protection Payment for March 2020;

**WHEREAS**, thereafter, the Debtors asserted that due to the COVID-19 pandemic, they had insufficient funds available to them to remit the full Adequate Protection Payment due and owing on April 10, 2020 and, as such, no Adequate Protection Payment was made on the 10th of April, however, an adequate protection payment of $386,910.38 was made on April 24, 2020;

**WHEREAS**, on April 17, 2020, Secured Creditor filed its *Objection to the Debtors' Continued and Final Use of Secured Creditor's Cash Collateral* [Docket No. 90] (the "Renewed Cash Collateral Objection");

**WHEREAS**, on April 19, 2020, the Debtors filed a reply to the Renewed Cash Collateral Objection;

**WHEREAS**, on April 20, 2020, the Court held a hearing to consider the Cash Collateral Motion and Renewed Cash Collateral Objection and authorized the Debtors' to continue to Secured Creditor's Cash Collateral through and including June 23, 2020 subject to certain conditions as stated on the record (the "Court's Conditions");

**WHEREAS**, on or about April 24, 2020, Secured Creditor, in accordance with the Court's conditions and with the Debtors' consent, applied the sum of $386,910.38 which represented certain of the Debtors' rents deposited into the Debtors' lockbox account, with $75,750.21 being applied to the Monthly Interest Payment and the remaining balance being used to pay certain real estate taxes due and owing on account of the Properties;

**WHEREAS**, On May __, 2020, the Court entered the *Second Interim Order Granting Debtors' Motion Pursuant to 11 U.S.C. §§ 105, 363(c)(2)(B), 363(e), 507(b), Fed. R. Bankr. P. 4001(b) and D.N.J. L.B.R. 4001-4 for Interim and Final Orders Authorizing Use of Cash Collateral* [Docket No. ___] (the "Second Interim Cash Collateral Order");

**WHEREAS,** to secure the issuance of one or more renewal insurance policies, which policies would expire on April 29, 2020, the Debtors' executed a contract with Marsh & McLennan Agency, LLC (the "Finance Company") to advance $403,049.00 (the "Annual Renewal Premium") in insurance premiums (the "Premium Financing Agreement"). In connection with the Premium Financing Agreement, the Debtors paid Finance Company a down payment in the amount of $146,780.80 (the "Renewal Premium Down Payment");

**WHEREAS**, due to the Debtors' actions, before the expiration of insurance at midnight on April 29, 2020, the Properties remained insured;

---

[4] Subsequent to the entry of the First Interim Cash Collateral Order, the Debtors requested (and the Secured Creditor consented) that the Adequate Protection Payment be made on or before the fifteenth (15th) of the month.

**WHEREAS**, since the Debtors were unable to finance the Annual Renewal Premium, in addition to the tax escrow and interest portion of the Adequate Protection Payment, Secured Creditor has offered to advance Debtors' the Annual Renewal Premium, including reimbursement for the Renewal Premium Down Payment;

**WHEREAS**, the Debtors have prepared, but have not yet filed, an emergency motion seeking approval of the Premium Financing Agreement;

**WHEREAS**, on April 30, 2020, the Debtors filed an *Emergency Motion to Extend (I) The Deadlines Imposed by 11 U.S.C. § 362(d)(3), (II) The Exclusive Period to File a Plan and Solicit Acceptances Thereto, and (III) For Related Relief* (the "362(d)(3) and Exclusivity Extension Motion");

**WHEREAS**, by and through the 362(d)(3) and Exclusivity Extension Motion, the Debtors seek to, among other things, (i) extend the commencement of monthly contract rate payments to Secured Creditor due under Section 362(d)(3) for 90 days (through and including August 15, 2020) unless further extended by order of the Court; (ii) extend the deadline for the Debtors to file a plan of reorganization under Section 1121(b) for 60 days (through and including August 15, 2020) unless further extended by order of the Court; and (iii) extend the deadline to solicit acceptances of any such plan for 60 days thereafter (through and including October 14, 2020) unless further extended by order of the Court;

**WHEREAS**, the Court is scheduled to hold a hearing to consider the 362(d)(3) and Exclusivity Extension Motion on May 12, 2020 (the "May 12th Hearing");

**WHEREAS**, the Parties have reached an agreement addressing (i) the Debtors' need to finance the Annual Renewal Premium, and (ii) resolving the 362(d)(3) and Exclusivity Extension Motion without incurring additional and unnecessary litigation costs and expenses; and

**WHEREAS**, the Parties' agreement is memorialized in this Stipulation and Consent Order;

**NOW, THEREFORE**, the Parties stipulate and agree, and the Court hereby **ORDERS**, as follows:

1. The aforementioned recitals are incorporated herein by reference as if set forth herein at length.

2. Within five (5) business days of the entry of this Stipulation and Consent Order, subject to Secured Creditor's receipt of an appropriate invoice evidencing the cost of the Annual Renewal Premium ($403,049.00), Secured Creditor will pay the Annual Renewal Premium, less the Renewal Premium Down Payment, directly to the Debtors' insurer (the "Direct Insurance

5

Payment").

3. The aforementioned advancement of the Annual Renewal Premium by Secured Creditor is provided for under Paragraph 6 of the First Interim Cash Collateral Order and the Second Interim Cash Collateral Order and is hereby approved.

4. Upon remittance of the Direct Insurance Payment, said amount shall be added to the Petition Date Indebtedness and Secured Creditor's Claim shall be deemed amended to evidence the inclusion of the Direct Insurance Payment.

5. Upon this Stipulation and Consent Order being deemed a final order, the amount of the Renewal Premium Down Payment paid by the Debtors to Finance Company shall be deemed part of and counted toward the Monthly Interest Payment that is due under the First Interim Cash Collateral Order for the May 2020 Adequate Protection Payment.

6. If there is one or more refunds of any portion of the Annual Renewal Premium, whether due to a subsequent sale of any of the Properties or otherwise, those refunds shall not be property of the Debtors or their estates under 11 U.S.C. Section 541 but shall be the exclusive property of Secured Creditor and, as such, such refunds shall be paid directly to Secured Creditor. If any refund amounts are paid to any of the Debtors, the Debtors must, within five (5) business days of receipt of said payment, notify Secured Creditor and its counsel and remit such funds to Secured Creditor. Upon entry of this Stipulation and Consent Order, the 362(d)(3) and Exclusivity Extension Motion shall be deemed withdrawn by the Debtors.

7. Notwithstanding anything contained herein to the contrary, the Parties' rights under Section 362(d)(3) of the Bankruptcy Code are hereby preserved.

8. This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation, interpretation, or enforcement of this Consent Order.

DM3\6787730.1
4812-4515-6028, v. 1

**STIPULATED AND AGREED:**

| **Hajjar Business Holdings, LLC,** *et al.* | **Wilmington Trust, National Association, as Trustee for the Benefit of the Registered Holders of Wells Fargo Commercial Mortgage Trust 2016-C34, Commercial Mortgage Pass-through Certificates Series 2016-C34** |
|---|---|
| BY: */s/ Anthony Sodono, III*<br>**McMANIMON, SCOTLAND & BAUMANN LLC**<br>Anthony Sodono, III, Esq.<br>Thomas M. Walsh, Esq.<br>Sari B. Placona, Esq.<br>75 Livingston Avenue, Second Floor<br>Roseland, New Jersey 07068 | BY: */s/ Sommer L. Ross*<br>**DUANE MORRIS LLP**<br>Sommer L. Ross, Esq. (NJ Bar No. 004112005)<br>222 Delaware Avenue, Suite 1600<br>Wilmington, DE 19801-1659<br><br>and<br><br>Lawrence J. Kotler, Esq. (Admitted *Pro Hac Vice*)<br>30 South 17th Street<br>Philadelphia, PA, 19103-4196 |