# EXHIBIT C

## (Response Letter)

DM3\9321459.7

NEW YORK
LONDON
SINGAPORE
PHILADELPHIA
CHICAGO
WASHINGTON, DC
SAN FRANCISCO
SILICON VALLEY
SAN DIEGO
LOS ANGELES
BOSTON
HOUSTON
DALLAS
FORT WORTH
AUSTIN

# Duane Morris®

*FIRM and AFFILIATE OFFICES*

HANOI
HO CHI MINH CITY
SHANGHAI
ATLANTA
BALTIMORE
WILMINGTON
MIAMI
BOCA RATON
PITTSBURGH
NEWARK
LAS VEGAS
CHERRY HILL
LAKE TAHOE
MYANMAR

ALLIANCES IN MEXICO

LAWRENCE J. KOTLER
DIRECT DIAL: +1 215 979 1514
PERSONAL FAX: +1 215 689 2746
*E-MAIL:* LJKotler@duanemorris.com

*www.duanemorris.com*

December 21, 2022

VIA E-MAIL

Anthony Sodono, III, Esq.
Sari B. Placona, Esq.
McManimon, Scotland & Baumann, LLC
75 Livingston Avenue, Suite 201
Roseland, NJ 07068

> **Re:**    **Response to Fed. R. Bankr. P. 2004 Subpoena Addressed to LNR Partners,
> LLC ("Special Servicer"), dated December 15, 2022**

Dear Counsel:

As you know, this firm represents Special Servicer in the above-referenced matter. Reference is made to that certain *Subpoena in a Case Under the Bankruptcy Code Pursuant to Fed. R. Bankr. P. 2004 and D.N.J. LBR 2004-1* dated as of December 15, 2022 (the "Subpoena"), served on Special Servicer, directly, purportedly in relation to *In re Hajjar Business Holdings, et al.*, Case No. 20-12465 (JKS) (the "Chapter 11 Case"). In the Subpoena, your clients (collectively, the "Debtors") have demanded that, pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Special Servicer must: (i) produce a witness for an examination (the "2004 Examination") at your law firm's offices in Roseland, New Jersey on January 12, 2023 at 10:00 a.m.; and (ii) produce and permit inspection and copying of documents at the same location on or before January 5, 2023 at 5:00 p.m.

For the reasons set forth herein, the Subpoena is improper and must be immediately withdrawn. In addition, Special Servicer contests the propriety of the 2004 Examination and the Debtors' standing to pursue the same.

DUANE MORRIS LLP

30 SOUTH 17TH STREET    PHILADELPHIA, PA 19103-4196          PHONE: +1 215 979 1000    FAX: +1 215 979 1020

Duane Morris

Anthony Sodono, III, Esq.
Sari B. Placona, Esq.
December 21, 2022
Page 2

*I.      The Debtors Cannot Compel Testimony or the Production of Documents over 100 Miles
from Special Servicer's Location.*

The Subpoena vastly exceeds the geographical limits imposed on subpoenas by Rule 45(c) of the Federal Rules of Civil Procedure (the "Federal Rules"), made applicable here by Bankruptcy Rules 2004(c) and 9016. Specifically, Federal Rule 45(c) provides that a subpoena may only command a person to attend a deposition within 100 miles of where the person resides, is employed or regularly transacts business in person.[1] The same limitation applies to the production of documents, electronically stored information or tangible things.[2] Here, the Subpoena is addressed to Special Servicer at its address in Miami Beach, Florida. However, the Subpoena designates the place of compliance as your law firm's office in Roseland, New Jersey, more than 1,200 miles away. The Subpoena violates Federal Rule 45(c) on its face, and the Debtors cannot compel Special Servicer to produce either a witness or any documents halfway across the country.

Moreover, even if the Subpoena did not violate Federal Rule 45(c) (which it does), the Subpoena would still be improper because the Debtors are not entitled to the information and testimony they seek for the reasons set forth herein.

*II.     The Subpoena Exceeds the Scope of Post-Confirmation Rule 2004 Examinations.*

Parties do not have an absolute right to Rule 2004 examinations.[3] "The language of Rule 2004(b) allows, in a narrow context, the use of a Rule 2004 examination post-confirmation. However, the examination must be limited to issues that the court still has the power to entertain. That is, it is restricted to the administration of the case post-confirmation."[4] If a nondebtor is the target of a Rule 2004 examination and the nondebtor objects, then the party moving for the Rule 2004 examination must demonstrate "good cause."[5] A post-confirmation investigation "does not fall within the scope or purpose of Rule 2004" where, as here, it "will not further the recovery and distribution of the Debtors' assets or otherwise assist with the administration of [the] case."[6]

---

[1] *See* Fed. R. Civ. P. 45(c)(1)(A).

[2] *See id.* at Rule 45(c)(2)(A).

[3] *In re Millennium Lab Holdings II, LLC*, 52 B.R. 614, 626 (Bankr. D. Del. 2016).

[4] *In re Express One Intern, Inc.*, 217 B.R. 215, 216-17 (Bankr. E.D. Tex.) (quoting and citing *In re Cinderella Clothing Indus., Inc.* 93 B.R. 373 (Bankr. E.D. Pa. 1988)) (internal quotation marks omitted).

[5] *Millennium Lab Holdings II*, 217 B.R. at 627-28.

[6] *Id.* at 628.

DuaneMorris

Anthony Sodono, III, Esq.
Sari B. Placona, Esq.
December 21, 2022
Page 3

In the *Millennium Lab Holdings II* case, the trustee of two trusts created pursuant to the debtor's confirmed plan sought to examine third parties under Rule 2004 as part of his investigation into potential claims related to the debtor's financial collapse. One trust held the debtor's retained causes of action (the "Corporate Trust"), while the other held causes of action contributed by certain lenders (the "Lender Trust"). The bankruptcy court held that "good cause" existed to permit the Rule 2004 examination on behalf of the Corporate Trust because it constituted a "legitimate post-confirmation inquiry" to ascertain potential causes of action which, if successful, would benefit the debtor's creditor body. By contrast, the bankruptcy court found that good cause did not exist to permit Rule 2004 discovery as to the Lender Trust, because it would not benefit the entire creditor body, and amounted to fishing for an advantage in potential private litigation.

As explained herein, the Subpoena and the 2004 Examination the Debtors seek in this case will neither lead to the discovery of cognizable claims, nor produce any discernible benefit for the Debtors' creditor body. Moreover, the Subpoena amounts to an improper fishing expedition on behalf of the Debtors' principal related to potential private litigation. Accordingly, the Subpoena is inappropriate and overbroad and must be withdrawn immediately.

A.    *The Debtors Have No Valid Claims Against Special Servicer.*

As a preliminary matter, pursuant to the Forbearance Letter Agreement dated as of June 20, 2022 (the "Forbearance Agreement"),[7] among, *inter alios*, the Debtors and WFCM 2016-C34 Medical Office Buildings NJ NY FL, LLC ("Secured Creditor"), the "Borrower Parties" (including the Debtors) granted the "Lender Parties" (including Secured Creditor and Special Servicer) a complete release of any and all claims that existed prior to June 20, 2022 (the "Execution Date").[8] The release granted to Special Servicer in the Forbearance Agreement extends to any and all matters "arising out of or relating to (i) the Loan, (ii) the Loan Documents, (iii) the Indebtedness, (iv) the Properties, including the development, financing, operation and leasing of same, and (v) any other agreement or transaction between any of Borrower Parties and any of Lender Parties concerning matters arising out of or relating to the items set forth in clauses (i)-(iv) above."[9] Accordingly, the Subpoena is overbroad and much of the information sought therein is irrelevant since, to the extent the Debtors had any claims against Special Servicer as of the Execution Date (which they did not), such claims were released as part of the Forbearance Agreement. Even assuming that the Subpoena was otherwise valid (which it is not), the Debtors could not compel

---

[7] Capitalized terms used but not otherwise defined herein shall have the meanings attributed to them in the Forbearance Agreement.

[8] *See* Forbearance Agreement, § 10.

[9] *Id.*

Anthony Sodono, III, Esq.
Sari B. Placona, Esq.
December 21, 2022
Page 4

DuaneMorris

Special Servicer to provide any documents, communications or testimony as to matters existing before the Execution Date.

Additionally, the Debtors have no valid claims against Lender Parties arising after the Execution Date. Upon information and belief, the substance of the Debtors' alleged claims is that Secured Creditor and/or Special Servicer: (i) failed and/or refused to provide the Debtors with appraisals and/or environmental reports related to certain of the Properties; (ii) failed and/or refused to meet with the Debtors' real estate broker; (iii) would not agree to the terms proposed by the Debtors for a sale or sales of one or more of the Properties; and/or (iv) somehow artificially held down the value of the Properties by failing and/or refusing to provide the Debtors with information or responses regarding certain leases. Initially, the appraisals and environmental reports could be equally obtained by the Debtors, and nothing in the Loan Documents, the Plan, the Forbearance Agreement or applicable law requires Secured Creditor or Special Servicer to provide such documentation to the Debtors. Likewise, nothing in the Loan Documents, the Plan, the Forbearance Agreement or applicable law requires Secured Creditor or Special Servicer to either meet with the Debtors' broker or consent to the terms that the Debtors propose for any sale of any of the Properties. As to the Debtors' allegations regarding the leases, I refer you to the response provided on that point in my previous letter dated December 14, 2022. In short, even assuming that all of the Debtors' allegations were true (which they are not), the Debtors would *still* not have any valid claims against Lender Parties. Accordingly, the Subpoena is improper and seeks information to which the Debtors are not entitled and which Special Servicer is under no obligation to provide.

> B.    *The Debtors' Alleged Claims Will Not Confer Any Benefit on Their Respective Estates.*

As noted above, a post-confirmation Rule 2004 investigation is inappropriate where, as here, it will not further the recovery and distribution of the Debtors' assets or otherwise assist with the administration of the case. In this case, the Subpoena and the alleged claims to which it relates will provide no benefit to the Debtors, their respective estates or general unsecured creditors. *First*, for the reasons stated above, the information/documentation that the Debtors are seeking will not lead to any cognizable claims. The Debtors have released any and all claims they may have had against Lender Parties prior to the Execution Date. Since then, Secured Creditor and Special Servicer have done nothing other than comply with the plain terms of the Loan Documents, Plan and Forbearance Agreement. *Second*, the Debtors do not dispute that Secured Creditor is undersecured, and even if the purported claims were to succeed somehow, there would still not be anything remaining for the benefit of unsecured creditors. In other words, there is no conceivable benefit to the Debtors' estates or their creditors in the Debtors pursuing their purported claims.

Rather, the only party who stands to benefit from the Debtors' purported claims against Secured Creditor and Special Servicer is the Debtors' principal, Dr. John H. Hajjar ("Dr. Hajjar"). Specifically, if the Debtors' claims were upheld, Dr. Hajjar would enjoy a discount on the $90.6

DuaneMorris

Anthony Sodono, III, Esq.
Sari B. Placona, Esq.
December 21, 2022
Page 5

million consent judgment that was entered against him in the Guaranty Action. Attempting to obtain a benefit for the Debtors' nondebtor principal within the confines of the Chapter 11 Case is not a valid or proper use of the Rule 2004 process, and may in fact raise an issue as to a potential conflict of interest between the Debtors and Dr. Hajjar. Regardless, the Debtors' attempt to litigate Dr. Hajjar's supposed claims in the Chapter 11 Case is contrary to the Plan and the Forbearance Agreement and should be immediately terminated. To the extent that Dr. Hajjar still wishes to litigate his purported claims outside of the Chapter 11 Case (which he should not), he may attempt to do so in the Guaranty Action or another non-bankruptcy forum, but he is still not entitled to a Rule 2004 examination to aid in that process.[10]

### III.    The Debtors' Requests Are Irrelevant, Unrelated to Their Alleged Claims and Are Otherwise Deficient.

Many of the documents, communications and other information the Debtors are seeking are irrelevant and unrelated to the Debtors' supposed claims. For example, Item 1 listed on Exhibit A to the Subpoena seeks all of Special Servicer's communications "regarding the Debtors" since the inception of the loan in 2016. Setting aside that this request is vague, oppressive and unduly burdensome, it seeks years' worth of information that: (a) has no bearing on the Debtors' present alleged claims; and (b) to which the Debtors are not entitled. Specifically, and as stated, the Debtors released Lender Parties from any and all claims arising on or before the Execution Date, including, without limitation, claims supposedly related to the Properties. Accordingly, the Debtors cannot compel, and Special Servicer has no obligation to provide, any documents, communications or testimony concerning any such pre-Execution Date claims.

Additionally, Items 3, 4 and 6 are not only irrelevant, but also could be equally obtained by the Debtors. Neither Secured Creditor nor Special Servicer has any obligation under the Loan Documents, the Plan, or the Forbearance Agreement to provide the Debtors with any property condition or inspection reports, appraisals or environmental assessments concerning the Properties. Moreover, the Debtors have not explained how Secured Creditor or Special Servicer's failure to provide such reports harmed the Debtors, or otherwise impaired the Debtors' ability to sell the Properties. Indeed, any credible buyer would procure its owns reports before purchasing any of the Properties (as opposed to relying on any reports obtained by the Lender Parties for their own benefit).

Finally, Items 5 and 7-9 request information that is either privileged and/or confidential. Item 7 also appears to be duplicative of Item 1. Again, to the extent these items seek information from prior to the Execution Date (e.g., a "copy of the Debtors' loan file"), the Debtors are not

---

[10] *Millennium Lab Holdings II*, 217 B.R. at 629 ("Rule 2004 was not intended to provide private litigants . . . with a strategic advantage in fishing for potential private litigation.") (quotations and citations omitted).

DuaneMorris

Anthony Sodono, III, Esq.
Sari B. Placona, Esq.
December 21, 2022
Page 6

entitled to any such information in light of the complete release they granted Lender Parties in connection with the Plan and Forbearance Agreement.

For the foregoing reasons, the Subpoena is invalid and should be withdrawn in its entirety. Accordingly, the issues you raised in your December 19 email concerning the location of the 2004 Examination and related matters are moot. Moreover, pursuant to the Forbearance Agreement, the Debtors failed to invoke the Extension Period and pay the required Extension Fee to Special Servicer by the Friday, December 16, 2022 deadline. Therefore, the Initial Forbearance Period will terminate on January 5, 2023, and the Debtors should govern themselves accordingly.

In summary, the Debtors appear to be using an improper Subpoena, and various baseless allegations of nonexistent claims, to attempt to buy time and extract other benefits from Secured Creditor, including a release of Dr. Hajjar. Special Servicer will not accede to the Debtors' attempt to abuse the Rule 2004 process. Rather, Special Servicer hereby demands that the Debtors withdraw the Subpoena immediately and abandon their baseless claims.

Secured Creditor and Special Servicer do not waive and instead expressly reserve all of their rights, remedies, claims, counterclaims and defenses pursuant to the Loan Documents, Plan, Forbearance Agreement and applicable law with respect to the Debtors' and Dr. Hajjar's acts and omissions, including, without limitation, the right to seek sanctions for abuse of the Rule 2004 process if the Subpoena is not immediately withdrawn.

Very truly yours,

Lawrence J. Kotler

LJK
Enclosure

CC:    Meagen E. Leary, Esq.
       David R. Augustin, Esq.
       Paul E. Chronis, Esq.